United States District Court
Southern District of Texas
**ENTERED**
January 31, 2023
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| Alex Michael Jimenez, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action H-21-4252 |
| | § | |
| Kilolo Kijakazi, | § | |
| Acting Commissioner of the | § | |
| Social Security Administration, | § | |
| *Defendant.* | § | |

## MEMORANDUM AND RECOMMENDATION

Alex M. Jimenez appeals the Social Security Administration (SSA) Commissioner's final decision denying his application for social security benefits. ECF No. 1. Pending before the court are Plaintiff's Motion for Summary Judgment, ECF No. 13, and Defendant's Cross-Motion for Summary Judgment, ECF No. 15. These motions are before the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1). Having considered the motions, administrative record, and applicable law, the court recommends that the final decision of the Commissioner be affirmed.

### 1. Background and Procedural Posture

Jimenez applied for disability insurance benefits (DIB) on September 13, 2019. Tr. 50, 61, 76. Jimenez claimed that he became disabled on July 17, 2019, due

to multiple sclerosis (MS), Tourette's syndrome, and herniated discs. Tr. 50, 61–63, 76.

Jimenez was born on March 11, 1995, and was twenty-four years old on the alleged disability onset date. Tr. 29, 50, 62. Jimenez graduated from high school. Tr. 29. Prior to filing for disability benefits, Jimenez worked as an airport baggage handler and as an airline customer service representative. Tr. 30–32, 169, 194–98.

The SSA denied Jimenez's application on April 6, 2020. Tr. 61. Jimenez sought reconsideration and his application was again denied on August 26, 2020. Tr. 76, *see also* 94. Jimenez requested a hearing, and Administrative Law Judge (ALJ) Thomas Helget held a hearing on January 28, 2021, in Houston, Texas. Tr. 26–49, *see also* 98–100.

At the hearing, the ALJ heard testimony from Jimenez and a vocational expert (VE). Tr. 29–67. Jimenez was represented by an attorney. Tr. 26–49. Before testimony began, Jimenez's attorney agreed that the record was complete. Tr. 28.

Jimenez testified that he was twenty-five years old and obtained a high school diploma. Tr. 29. Jimenez testified that prior to the alleged onset date of July 17, 2019, he had most recently worked at the airport ticket counter for American Airlines. Tr. 30–31. Jimenez testified that he stopped working after a car accident. Tr. 31. Jimenez testified that prior to working at the ticket counter, he had been a baggage handler for Envoy Air. Tr. 31–32.

The VE testified that Jimenez's prior work history would be classified by the Dictionary of Occupational Titles (DOT) as a customer service representative for an airline and baggage handler for an airline. Tr. 33. The VE testified that the customer service representative work was categorized as skilled at the medium exertional level. *Id.* The VE testified that work as a baggage handler for an airline was categorized as unskilled at the heavy exertional level. *Id.* The VE testified that her testimony varied from the DOT because the DOT defines the baggage handler position as semi-skilled, but, in the VE's professional experience, the position could be learned in thirty days with a short demonstration and was therefore unskilled. *Id.* Jimenez's attorney had no objections to the VE's testimony about Jimenez's past work. Tr. 33–34.

Jimenez testified that in July 2020 he was driving for his wife who was working for a food delivery service. Tr. 35. He testified that he would drive his wife to pick up food for delivery. He would do so for approximately four hours with some breaks. Tr. 35–36.

Jimenez testified about his medical history. Tr. 34–43. Jimenez testified that in July 2019 he had a traffic accident that injured his neck and back. Tr. 34. He testified that he suffered from whiplash, cervical herniated discs, and lumbar herniated discs. *Id.* He had microdiscectomy surgery on his lower back in March 2020. *Id.* Jimenez testified that he suffered from lower back pain. Tr. 35. He could

not sit for an hour without feeling pain and needing to adjust his position. *Id.* He also experienced pain and needed to adjust his position when standing and was scared to move in a way that might hurt his lower back. *Id.* Jimenez testified that he could lift no more than ten pounds. *Id.*

Jimenez testified that he had an MS exacerbation in November 2020 and that he experienced coldness in his right leg, tingling in his left leg, numbness in his right arm, and balance problems. Tr. 37. He had been prescribed steroids to treat these symptoms. *Id.* Jimenez further testified that he received treatment over a five-day period for his MS at that time. *Id.* Jimenez testified that the treatment helped alleviate the symptoms, but that his balance was still off and he experienced occasional pain and numbness. *Id.* He testified that his MS was "pretty controlled" at the time of the hearing. *Id.*

Jimenez testified that, when he had MS symptoms, his arms and legs were most affected. Tr. 37. He testified that, during an MS exacerbation, he could not reach overhead, lift, or grasp anything with his hands. Tr. 37–38. Jimenez would experience MS exacerbations two to three times a year and they would last approximately five days if controlled with steroids. Tr. 38. Jimenez testified that he was able to use his hands before the accident without gripping issues but that he had issues almost every day after the accident. Tr. 38. He testified that reaching overhead was hard because of his neck problems. Tr. 39.

4

Jimenez testified that he was diagnosed with Tourette's syndrome when he was eight years old. Tr. 39. He testified that it caused vocal tics, uncontrolled eye blinks, an involuntary back arch, and head twitches throughout the day. *Id.* Jimenez also testified that he had been diagnosed with depression and was on medication to stabilize his mood. Tr. 39–40. His depression was due to pain as well as a side effect of MS. Tr. 40.

Jimenez testified that his health problems prevent him from helping his wife around the house. Tr. 40. He watched television and played video games during the day until his back and neck got tired. *Id.* He would lie down to relieve that pain. *Id.*

In response to his attorney's questions, Jimenez testified that he could work at most around four hours a day. Tr. 41. Jimenez testified that he could not work a full-time job because of the pain caused by sitting for long periods. Tr. 42. Jimenez explained that his need to alternate between positions, including lying down, would prohibit him from working full-time. *Id.* He testified that four hours would be "sufficient" and "ideal." Tr. 43. Jimenez testified that, while he had problems with concentration, he was usually able to "push through." *Id.*

The ALJ asked the VE what work a hypothetical individual of the same age, education, and vocational history as Jimenez could perform if limited to sedentary work with the following restrictions:

> [The person] can do occasional climbing of ramps or stairs, no climbing
> ladders, ropes or scaffolds. We'll do occasional posturals, occasional

balance, occasional stoop, occasional kneel, occasional crouch, occasional crawl. Let's do occasional overhead reach with the upper extremities, bilateral, and I'll go ahead and just frequent gross handling and fine fingering with the upper extremities, bilateral as well. The individual will also be able to understand, remember, and carry out detailed, but not complex instructions, but no work performed in a fast-paced production environment.

Tr. 44.

The VE testified that such an individual would not be able to perform any of Jimenez's past work. Tr. 44. Because Jimenez had transferable clerical skills, the VE assumed the hypothetical individual would be able to perform both skilled and unskilled jobs. *Id.* According to the VE, the hypothetical individual would be able to work as an appointment clerk and information clerk–both being semiskilled and sedentary positions according to the DOT. Tr. 45. The VE further testified that the person would be able to work as a document preparer, addresser, or telephone solicitor, all unskilled, sedentary positions according to the DOT. *Id.* All of the listed jobs are available in large numbers in the national economy. Tr. 45–46. The VE explained that parts of her testimony varied from the DOT based on her professional experience. *Id.* Jimenez's attorney was allowed to cross-examine the VE. Tr. 47–48.

The ALJ issued his decision on February 12, 2021, finding that Jimenez was not disabled from July 17, 2019, the alleged onset date, through the date of the decision. Tr. 10–20. Jimenez filed a request for review of the ALJ's decision on April 13, 2021. Tr. 156–58. On October 22, 2021, the Appeals Council denied

Jimenez's request for review. Tr. 1–3. Jimenez timely filed a complaint and application to proceed in forma pauperis in federal court on December 21, 2021. *See Jimenez v. Kijakazi*, H-21-mc-2802, ECF No. 1 (S.D. Tex. December 21, 2021).

## 2. Legal Standards

The Social Security Act provides disability insurance benefits to individuals with physical and mental disabilities who have contributed to the program. *See* 42 U.S.C. § 423. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner uses a sequential, five-step approach to determine whether the claimant is disabled. *See Schofield v. Saul*, 950 F.3d 315, 317 (5th Cir. 2020). The claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on the fifth step. *See Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021). A finding that the claimant is disabled or not disabled at any point in the five-step review terminates the analysis. 20 C.F.R. § 404.1520(a)(4) (2019).

The court's review of the ALJ's disability determination is "highly deferential," and the court asks "only whether substantial evidence supports the decision and whether the correct legal standards were employed." *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018) (citations omitted). "A decision is

supported by substantial evidence if 'credible evidentiary choices or medical findings support the decision.'" *Salmond v. Berryhill,* 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016)). "Substantial evidence is 'more than a mere scintilla but less than a preponderance.'" *Id.* (quoting *Williams v. Admin. Rev. Bd.*, 376 F.3d 471, 476 (5th Cir. 2004)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The reviewing court must examine the record as a whole to determine whether substantial evidence supports the ALJ's decision. *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992).

### 3. Analysis of the ALJ's Determination

#### A. Step One

At step one, the ALJ must determine whether the claimant is doing substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i) (2019). A person engaged in substantial gainful activity is not disabled, regardless of his medical condition, age, education, or work experience. 20 C.F.R. § 404.1520(b) (2019).

The ALJ found that Jimenez had not engaged in substantial gainful activity since the alleged onset date of July 17, 2019. Tr. 12. This finding is not in dispute.

#### B. Step Two

At step two, the ALJ determines whether any of the claimant's impairments or any combination thereof is severe and has lasted or is expected to last a continuous

period of at least twelve months. 20 C.F.R. § 404.1520(a)(4)(ii) (2019) (citing 20 C.F.R. § 404.1509). An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c) (2019).

An impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Salmond*, 892 F.3d at 817 (emphasis omitted) (quoting *Loza v. Apfel,* 219 F.3d 378, 391 (5th Cir. 2000)). A person without a severe impairment is not disabled. *Schofield*, 950 F.3d at 318 (citing 20 C.F.R. § 404.1520(c)).

The ALJ found that Jimenez had the following severe impairments: MS, Tourette's syndrome, degenerative disc disease (lumbar and cervical spines), status post-degenerative disc disease surgery, and depression. Tr. 12. The ALJ found Jimenez's gastroesophageal reflux disease (GERD) was not severe because it caused "no more than a minimal effect on the claimant's ability to perform basic work activities." Tr. 13. Jimenez does not dispute these findings.

**C. Step Three**

At step three, the ALJ determines if any of the claimant's severe impairments meets or equals a listed impairment in appendix 1 (Listing). 20 C.F.R. § 404.1520(a)(4)(iii) (2019); *see also* 20 C.F.R. Part 404, Subpt. P, App'x 1 (2019).

If all the criteria of a Listing section are met or equaled, the claimant is considered disabled. 20 C.F.R. § 404.1520(d) (2019); *Whitehead*, 820 F.3d at 780–81.

The ALJ found that Jimenez's impairments or combination of impairments did not meet or medically equal the severity of any impairment defined in the Listing. Tr. 13–14. The ALJ appropriately considered Jimenez's impairments in accordance with Listing sections 1.04 (disorders of the spine), 11.09 (MS), 12.04 (depression), and 12.11 (neurodevelopmental disorders). Tr. 13–14. The ALJ concluded that Jimenez did not meet the criteria of any Listing section. *Id.* Jimenez does not dispute these findings.

**D. Residual Functional Capacity**

Before reaching the final two steps, the ALJ must assess the claimant's residual functional capacity (RFC) "based on all the relevant medical and other evidence in [the] case record[.]" 20 C.F.R. § 404.1520(e) (2019); *see also Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005) (citing 20 C.F.R. § 404.1545(a)(1)); SSR 96-8p, 1996 WL 374184, at *2, 3, 5 (July 2, 1996). An RFC assessment is a determination of the most a claimant can do despite all physical and mental limitations. *Perez*, 415 F.3d at 461–62 (citing 20 C.F.R. § 404.1545(a)(1)); SSR 96-8p, 1996 WL 374184, at *2, 4. "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing

specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7.

The RFC determination is an issue reserved to the Commissioner. 20 C.F.R. § 404.1520b(c)(3) (2019); *Taylor v. Astrue,* 706 F.3d 600, 602–03 (5th Cir. 2012) (stating that the RFC determination is the "sole responsibility of the ALJ"). Consequently, the ALJ has the authority to interpret the medical evidence. *See id.* at 603.

The ALJ determined that Jimenez was limited to sedentary work but could never use ropes, ladders or scaffolding; could occasionally balance, stop, kneel, crouch and crawl; could occasionally reach overhead with the bilateral upper extremities; was limited to frequent gross handling and fine fingering with the bilateral upper extremities; was able to understand, remember, and carry out detailed, but not complex instructions; and was not able to perform work in a fast-paced production environment. Tr. 15.

In determining Jimenez's physical RFC, the ALJ considered and discussed Jimenez's subjective complaints, Jimenez's hearing testimony, the medical evidence, several medical opinions, the state agency administrative findings, and consultative examinations. Tr. 15–17. About Jimenez's subjective complaints and allegations about his limitations, the ALJ stated:

> [a]fter careful consideration of the evidence, the undersigned finds that
> the claimant's medically determinable impairments could reasonably

11

be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

Tr. 15. In support of that conclusion, the ALJ discussed Jimenez's medical records relating to this MS symptoms. The ALJ explained that the "medical evidence only reflects intermittent flare-ups." Tr. 16 (citing Ex. B16F at 40, which is Tr. 489). The cited record pertains to a July 22, 2020 physical therapy examination, during which Jimenez reported being diagnosed with MS at age seventeen–several years before the alleged disability onset date–with "attacks occurring infrequently every 2–3 years." Tr. 489. The ALJ discussed records of a July 23, 2019[1] medical visit which noted Jimenez's MS diagnosis. Tr.16 (citing Ex. 2F, which is Tr. 287–331). The court notes that the physical examination findings at that time included normal muscle strength bi-laterally in all muscle groups. Tr. 292. The record further shows intact coordination and sensory responses, normal gait, and no abnormal movements. *Id.*

The ALJ also discussed Jimenez's motor vehicle accident. Tr. 16. The ALJ accurately noted that, after a March 2020 surgery to treat his injuries, Jimenez reported that his pain was a 4 out of 10 and that he was doing very well. Tr. 16 (citing

---

[1] The ALJ incorrectly described the visit as occurring in May 2019. *See* Tr. 16. It was a July visit describing a May 2019 episode involving right arm and leg weakness. Tr. 289.

B16F at 16, which is Tr. 465.) The ALJ noted correctly that the same record documented Jimenez having strong motor skills in both lower extremities and no numbness or tingling. *Id.*

Linda Rayha, Ph.D, a psychological consultative examiner (CE) opined that Jimenez did not exhibit a psychiatric disorder or psychological impairment. Tr. 17 (citing B8F at 3, which is Tr. 400). She found most of Jimenez's limitations to be attributable to his physical problems. *Id.* The ALJ found the opinion to be only somewhat persuasive because it was somewhat supported by and consistent with the medical evidence. Tr. 17. The ALJ found, contrary to Rayha, that Jimenez's depression was severe.

The ALJ also consider Dr. Farzana Sahi, M.D.'s, opinion. Sahi, an internal medicine CE, concluded that Jimenez had a "severe restriction." Tr. 16 (citing Ex. B9F, which is Tr. 403–10). Sahi found that Jimenez suffered from MS, had degenerative disease of the back, had good grip strength, and walked with a limp. Tr. 403–05. The ALJ found Sahi's opinion to be only somewhat persuasive because his findings were consistent with the evidence. Tr. 17. The finding of "severe restriction" was, per the ALJ, "not defined and vague." *Id.* The court agrees. The statement is completely out of context and lacks explanation. *See* Tr. 405.

Turning to the state agency consultants, the ALJ found the psychological consultants' opinions that Jimenez had no mental limitations to be unpersuasive

because they were unsupported by and inconsistent with the medical evidence. Tr. 17. He found the state agency medical consultants' opinions to be persuasive, given they were supported by and consistent with the medical evidence. *Id.* Per the latter consultants, Jimenez had the capacity to perform sedentary work. *Id.* The ALJ found Jimenez to have further limitations, however. *Id.*

The court concludes that the ALJ's RFC determination is supported by the substantial evidence. The limitation to sedentary work is supported by opinion and medical evidence and may even have been a conservative conclusion. The ALJ included postural, manipulative, communicative, and mental limitations, all of which are supported by the record. Jimenez presents no evidence or argument that further limitations are warranted.

Jimenez assigns several errors to the ALJ's RFC determination. He first argues that the ALJ erred in "summarizing" the medical evidence and failing to "provide any insight into how the evidence actually validated the determination." ECF No. 13 at 5. The court disagrees with Jimenez's premise and his conclusion. First, the ALJ has no option other than to "summarize" the medical evidence. The only alternative is to incorporate the entire medical record into the decision. In any event, the ALJ did an adequate job of discussing the evidence that supported his conclusion. There is always more an ALJ could do, but here it is enough. The court

understands from reading the decision what evidence was considered, what the ALJ found persuasive, and how it applies to the analysis.

Jimenez argues that the ALJ's failed to comply with SSR 96-8p, 1996 WL 374184, which sets out the SSA's policies regarding the determination of the RFC. Jimenez argues that the ALJ failed to provide a discussion of "how, given the limitations Mr. Jimenez has, he would be capable of sustained work." ECF No. 13 at 6. SSR 96-8p states, in part:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

1996 WL 374184 at *7. The court agrees with Jimenez that the ALJ could have done more to tie the evidence to the limitations set forth in the RFC. But for each limitation in the RFC, there is evidence to support it. More importantly, to Jimenez's argument, the court is not aware of, and Jimenez has not cited, any evidence to support further limitations beyond those set forth in the RFC. The ALJ's failure to follow the Commissioner's rules to the tee is not reason enough to remand the case. Rather, Jimenez must show that the failure prejudiced him, which he has not done.

*See Kneeland v. Berryhill*, 850 F.3d 749, 761 (5th Cir. 2017) (quoting *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007)) ("Procedural perfection in administrative proceedings is not required as long as the substantial rights of a party have not been affected."); *Shave v. Apfel*, 238 F.3d 592, 597 (5th Cir. 2001) ("The Court requires . . . a showing that the claimant was prejudiced by the agency's failure to follow a particular rule before such a failure will be permitted to serve as the basis for relief from an ALJ's decision.").

Jimenez next argues that the ALJ misrepresented evidence in determining the RFC. ECF No. 13 at 6–7. Specifically, Jimenez faults the ALJ for stating that Jimenez desired to return to work and exercise. ECF No. 13 at 6. This is not a misrepresentation or a misquotation. It is exactly what Jimenez said. *See* Tr. 497. There was no error. Jimenez argues that "[t]he ALJ again curiously is vague when he says, 'The claimant was involved in a motor vehicle accident in 2019.'" *Id.* at 7. Jimenez was involved in a motor vehicle accident, so Jimenez's argument is meritless.

Jimenez argues the ALJ failed to make a function-by-function assessment in formulating the RFC in violation of SSR 96-8p. ECF No. 13 at 7. The RFC states that Jimenez is capable of sedentary work with a number of functional limitations. Tr. 15. The ALJ included postural limitations, such as ability to climb, and use ladders. *Id.* He included manipulative limitations on his ability to reach and finger.

*Id.* And he included mental limitations on Jimenez's ability to understand instructions and work in a fast paced environment. *Id.* This is exactly what SSR 96-8p requires. 1996 WL 174184 at *3–6. There was no error.

Jimenez cites *Watson v. Barnhart*, 288 F.3d 212, 217 (5th Cir. 2002), and argues that the ALJ should have considered Jimenez's ability, not only to find work, but to maintain it. He argues that Jimenez would be absent from work too often to maintain a job. Jimenez cites no evidence in support of his argument, so it is without merit for that reason alone. Moreover, this is not a case where Jimenez is arguing that he can work during some periods but not others. Rather, Jimenez argues he cannot work a full time job at all. Thus, the principles of *Watson* do not apply. *See Frank v. Barnhart*, 326 F.3d 618, 621 (5th Cir. 2003) (concluding that the ALJ need not make a finding about the individual's ability to maintain employment in cases where there is no evidence that the person can work for short spans but cannot hold a job).

Jimenez argues that the ALJ selectively cited evidence and failed to explain the weight he afforded medical opinions. ECF No. 8–15. Jimenez fails to cite any evidence that the ALJ did not consider that would have altered the outcome of this case. Moreover, much of the evidence that Jimenez states the ALJ failed to consider was explicitly considered. For example, Jimenez states that the ALJ failed to consider his treating physician's records. The ALJ cited and discussed these very

records, which pertain to Jimenez's pre-surgery treatment immediately after his car accident. Tr. 16 (citing Ex. B6F at 1, which is Tr. 350). Jimenez faults the ALJ for failing to consider treatment notes relating to another office visit immediately before the surgery, which corrected many of the medical problems resulting from the car accident. ECF No. 13 at 9 (citing Tr. 432-33). It is hard to see how pre-surgery treatment notes could be relevant to Jimenez's condition post-surgery. The opinions of Dr. Rayha and Dr. Sahi, which Jimenez faults the ALJ for ignoring, were explicitly considered.

The ALJ also properly weighed those opinions under the current regulations. Jimenez argues that 20 C.F.R. § 1527(c), which pertains to the weight given to a treating physician's opinion, applies to this case. ECF No. 13 at 12–13. It does not. That section applies to claims filed before March 27, 2017. *See* 20 C.F.R. § 1527 (2019). Jimenez applied for disability insurance benefits (DIB) on September 13, 2019, so 20 C.F.R. § 1520c applies. *See* 20 C.F.R. §§ 1520c, 1527 (2019) (stating the cutoff date in both sections). Under the revised regulation, the ALJ must consider medical opinions, including those of treating physicians, using five listed factors, giving the most weight to the supportability and consistency of the opinion. *See* 20 C.F.R. §§ 1520c(b)(2), (c) (2019). Here, the ALJ articulated how persuasive he found the medical opinions and articulated the supportability and consistency of each. He complied with the regulations. The fact that the ALJ did not address the

pre-surgery physicians' notes is irrelevant. It is not clear that these qualify as opinions. And, in any event, they clearly are not consistent with the post-surgery medical evidence.

Jimenez argues that the ALJ ignored his subjective complaints of pain and limitation. That is not true. The medical records that the ALJ discussed include many self-reports of pain and disability. Tr. 16. The ALJ explicitly considered Jimenez's testimony. Tr. 15.

The RFC is supported by substantial evidence. Jimenez has not shown that he is more limited than the ALJ found him to be. There was no error.

## E. Step Four

At step four, the ALJ determines whether the claimant can perform jobs he previously worked by comparing the RFC determination with the demands of the claimant's past relevant work. 20 C.F.R. § 404.1520(f) (2019); *see also Perez*, 415 F.3d at 462. If the claimant can perform her past work, he is not disabled. 20 C.F.R. § 404.1520(f) (2019). If the claimant cannot perform his past work, the ALJ proceeds to step five. *See* 20 C.F.R. § 404.1520(g)(1) (2019).

The ALJ stated that Jimenez's past relevant work exceeded his residual functional capacity. Tr. 18. This finding is undisputed.

## F. Step Five

At step five, the ALJ determines whether the claimant can perform any other work by considering the claimant's RFC and other factors, including age, education,

19

and past work experience. *Schofield*, 950 F.3d at 318 (quoting 20 C.F.R.
§ 404.1520(a)(4)(v)). If the claimant can perform other work available in the
national economy, the claimant is not disabled. *Schofield*, 950 F.3d at 318 (citing
20 C.F.R. § 404.1520(g)).

The ALJ found that Jimenez could perform jobs that exist in significant
numbers in the national economy. Tr. 18–19. The ALJ relied on the hearing
testimony of the VE that an individual of Jimenez's age, education, and RFC would
be able to work as an appointment clerk, information clerk, document preparer,
addresser, and telephone solicitor. *See id.*

Jimenez argues that the ALJ erred in his step-five finding by relying on the
VE's testimony. ECF No. 13 at 15–17. Jimenez's argument is that the VE's
testimony could not be reasonably relied upon because it was based on a flawed
RFC. *Id.* at 15–16. The court found above that substantial evidence in the record
supports the ALJ's RFC finding. Because the VE's testimony was based on a
hypothetical question that incorporated all the limitations reasonably recognized by
the ALJ and Jimenez's attorney cross-examined the VE, the VE's testimony is
substantial evidence supporting the ALJ's step-five determination. *See Masterson v.
Barnhart*, 309 F.3d 267, 273–74 (5th Cir. 2002) (holding that the ALJ properly relied
on the VE's testimony because the ALJ "scrupulously incorporated" all the

limitations "supported by the evidence and recognized by the ALJ" and gave an opportunity for cross-examination).

The court's review of the administrative record reveals that the ALJ employed the correct legal rules and that the findings at each of the five steps were supported by substantial evidence.

## 4. Conclusion

The ALJ's decision denying social security benefits is consistent with the law and supported by substantial evidence. There is no genuine issue of material fact, and summary judgment is appropriate. Fed. R. Civ. P. 56(a), (c). Accordingly, the court recommends that Defendant's motion for summary judgment be granted and Plaintiff's motion for summary judgment be denied.

The parties have fourteen days from service of the Memorandum and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas on January _31_, 2022.

_____

Peter Bray